ROBERT W. CLARK

v.

THOMAS SCANLAN.

*Master and Servant—Building Contractor—Wrongful Discharge— Recovery for Partial Performance—Damages—Evidence—Instructions.*

Clark v. Scanlan.

1.   In an action brought by a contractor, discharged before the completion of his labors, to recover for services rendered, this court holds that the admission of evidence touching the reasonable worth thereof was erroneous, and that it should have been shown what the work and material furnished were worth according to the contract price.

2.   In the case presented it is *held:* That the fact that the court gave the jury an instruction, stating the correct rule of damages, upon request of the defendant, will not cure the error committed in giving an erroneous one in behalf of the plaintiff, there being no evidence in the record as to the true rule on which to base a verdict, it being apparent that the erroneous rule was followed in arriving at the same.

[Opinion filed April 17, 1889.]

APPEAL from the Superior Court of Cook County; the Hon. ELLIOTT ANTHONY, Judge, presiding.

This action was brought by appellee to recover for certain mason work done for appellant. The declaration contained the common counts and a special count, which alleged the making of a contract by plaintiff to build and complete for defendant the substructure of a residence, including stone and brick work, etc., according to plans and specifications, and to the satisfaction of the architect, for the sum of $1,275; that plaintiff began the work and proceeded until it was discontinued in the fall of 1886, by the orders of appellant, until settled weather should arrive in the spring of 1887. That plaintiff was and always has been ready to complete said work according to agreement, but defendant refused to allow plaintiff to do so, and canceled the said contract and prevented plaintiff from completing said work, and wrongfully discharged plaintiff from any further performance thereof, and retained all the material and labor of plaintiff, whereby plaintiff has lost said labor and material, and the profits and advantages he would have derived by the completion of said work, etc. Defendant pleaded the general issue and set-off. There was a trial by jury and a verdict for $1,200 against defendant, and from the judgment rendered thereon this appeal is prosecuted.

Messrs. T. H. GAULT and D. H. PINNEY, for appellant.

Under the proofs in this case there can be no question of the utter worthlessness of the structure as made by appellee. On whom shall the loss fall, is the question to be settled. The court below instructed the jury in effect that no matter whose fault it was, if the work was done under the direction of the architect, then the contractor should recover.

Even the certificate of an architect can not dispense with the performance of any substantial part of the contract. Bond v. Newark, 4 C. E. Green (N. J.), 376.

Nor will the acceptance of a different class of work by the architect bind the owner. Gracius v. Black, 50 N. Y. 145.

"The duty of the architect was to see that the contract was faithfully fulfilled according to the agreement. Appellant had a right to insist upon a strict compliance with the agreement, and, unless specially authorized, the architect could not change its terms. If he might to the extent claimed in this case, he might as to any and every part of its terms, specifications and conditions. This no one would claim." Adlard v. Muldoon, 45 Ill. 194.

While this is not an action on the contract where a certificate had been given—nor an action on the contract alleging fraud on the part of the architect in refusing to give a certificate—still the same principle, so far as applicable, would apply.

The allegations of the declaration are, that appellant and appellee entered into a written contract for the building of a substructure or basement, which was to be built by appellee according to contract plans and specifications and to the satisfaction of the architect. The work progressed until a certain time, when, by orders of appellant, work was discontinued until settled weather in the spring, and that the appellant refused to permit appellee to fully complete the job, etc.

Under such a complaint recovery could be had (if at all) for the value of the labor and material. Guerdon v. Corbett, 87 Ill. 272.

If the price is not fixed by the contract then a recovery could be had for the value of the service. Eyer v. Weissgerber, 2 Iowa, 463.

If the price is fixed by the contract and a party is prevented from performing, then he may recover in proportion to the stipulated price. McCarsland v. Creasep, 3 Greene (Iowa), 161.

The correct mode of determining the value of satisfactory work on an unfinished contract is the contract price, less what it would cost to complete it. Gowzales v. McHugh, 21 Tex. 259.

The measure of damages is what it would cost to procure the work necessary to be done to make the building conform to contract. Smith v. Bristol, 33 Iowa, 24.

In no case can a recovery be had for more than the contract price, and a recovery can not be had for that unless the work is reasonably worth it, or if, by paying it, the rest of the work will cost the defendant more than if the whole had been completed under the contract. Allen v. McKibbin, 5 Mich. 447.

The measure of damages, if the work had been good, would be the contract price, less what it would cost to finish the job. If, however, as in this case, the work was so poorly done as to be of no value, or if it cost the appellant more to rebuild and complete the structure, so as to make it as good as the contract price and specifications required it to be, then no recovery could be had at all; and the great weight of evidence in this case shows that the work done and material furnished left a structure wholly unfit to build upon, and that the cost to rebuild was greater than the contract price.

Mr. EDWARD MAHER and JOHN C. SIMONDS, for appellee.

Under the contract in this case the architect and superintendent was the agent of the owner and the arbiter of all disputes. If he was the arbiter it became the imperative duty of the appellee to obey his directions. If he so obeyed directions and injury thereby resulted the contractor was not blameworthy. If not blameworthy he was entitled to recover in this action.

The agreement in evidence established the *status* of the contracting parties. Scanlan submitted himself to the will of the architect. The work was to be done " to the satisfac-

tion of and under the direction of the architect." So, "if any dispute should arise between said parties in relation to the contract, or work to be performed under it, or in relation to the plans, drawings and specifications (or alterations), the decision of G. Isaacson, architect, shall be final and binding on all the parties hereto."

The architect acts for the owner. If the owner may be bound by an agent in any transaction or contract, he may be bound in a building contract where he expressly designates his agent and charges him with express duties.

The relation of principal and agent exists where an architect acts for the owner in superintending the erection of a building. Emden's Building Law, 65-6; Kimberly v. Dick, L. R. 13 Eq. 1.

The relationship corresponds with that of master and servant, and the maxim, *qui facit per alium facit per se* applies. Brown v. Acrington Cotton Co., 3 H. & C. 511; Emden Building Law, 65-6.

The English courts have decided that, when a matter in dispute in the contract is submitted to an architect, his determination of the subject is in the nature of an award. Wadsworth v. Smith, L. R., 6 Q. B. 332.

In cases not involving the precise points at issue in this case, our own Supreme Court hold that the decision of the architect is conclusive, where the contract provides his decision shall be final on all questions of difference arising under the contract. Downey v. O'Donnell, 86 Ill. 49; Finney v. Condon, 86 Ill. 78; Downey v. O'Donnell, 92 Ill. 559; Snell v. Brown, 71 Ill. 134.

Several cases are cited by counsel for appellant in support of the theory, that the certificate or approval of the architect does not waive the right of the owner to have a substantial compliance with the contract. Chiefly they seem to rely on Adlard v. Muldoon, 45 Ill. 194; Bond v. Newark, 4 C. E. Green (N. J.) 376; Gracius v. Black, 50 N. Y. 145.

It is respectfully submitted to this court that these cases do not control the case at bar. Each of them is distinguishable from this. In the Adlard case the architect undertook to

Clark v. Scanlan.

approve performance, where there were palpable omissions and distinct variations and alterations in the contract. Gas-pipes were left out of bed-rooms. The newel posts, brackets and cornices were altered and varied. The architect justified his conduct by showing that extra work had been done as compensation. The court very rightfully held that the architect could not alter or vary the agreement. This is certainly different from the present case, where a dispute as to method of doing the work arose. Also in the bond case (*ubi sup.*) the court said that an architect could not accept a brick house where a marble house was contracted for, " but the architect may say that the work was done in a workman-like manner or of proper materials of the kind required." Bond v. Newark, 4 C. E. Green, (N. J.) 376; Bonnet v. Glattfeldt, 120 Ill. 176.

The very questions involved in this case have been twice before the Supreme Court of Illinois. The doctrine seems fully declared and may be pronounced *res adjudicata.*

In the first case the court held the contractor bound by the terms of the contract. If he agreed to perform the work to "the satisfaction and under the direction of the architect," he must do so. "An express contract admits of no departure from its terms." Clark v. Pope, 70 Ill. 131–2.

If there was doubt as to the plans, etc., it was the duty of the contractor to apply to the architect for directions. If he relied on his own skill he would have to bear the consequences. This decision makes it the duty of the contractor to apply for directions. Clark v. Pope, 70 Ill. 133.

Again, in a recent and well-considered case, where the contract was that "the architect was appointed superintendent, with full power to inspect, accept and reject any work done or material furnished, whether worked or otherwise, when the same should not be in accordance with the plans and specifications, and that his decision on the matter should be binding and conclusive on the parties," the error assigned was the refusal of an instruction, which said that "it was the duty of the plaintiff to take down and rebuild a wall in a workmanlike manner, and that no instructions of the superintendent [architect] could relieve the plaintiff from the duty

imposed by that agreement." This instruction was refused. It presents the very same ideas contained in the fourth and fifth instructions refused in this case. Mr. Justice Sheldon, in delivering judgment, said:

"There might well have been a difference of opinion as to how much of the walls should be taken down. We think under the agreement the architect was constituted the judge in this respect, whose decision should be binding and conclusive on both parties; and if he determined to what extent the walls should be taken down then the plaintiff would have been justified in following the directions of the architect." Bonnet v. Glattfeldt, 120 Ill. 176.

There was some evidence in the case that Mr. Clark insisted on more mortar. If he did, he also is directly responsible. If the owner is responsible for the acts of his architect, *a fortiori*, he is liable for his own. Where the defect in the work is occasioned by the owner, the contractor is not thereby responsible. Vermont St. M. E. Church v. Brose, 108 Ill. 207.

MORAN, J. The evidence introduced by appellee tended to show that he performed the work under the special contract which was introduced in evidence, and under the express direction and constant superintendence of the architect mentioned in the contract, and that he was ready and willing and offered to complete the work; that he was prevented from so doing by appellant, who declared the contract forfeited and canceled. There is in the record a conflict of evidence as to the manner in which the work was done and as to delay in doing the work, and who was to blame therefor, but it is agreed on all hands that the work was not completed, and that a material portion of that called for by the contract remained to be performed, when appellant notified appellee that he would not allow him to proceed further with the job. If it be assumed that the controversy, with reference to the manner and time of performance of the work, is settled by the verdict in favor of appellee, and that the effect of the verdict is to establish that the forfeiture of the contract by appellant was wrongful, still the verdict can not stand, for the

Clark v. Scanlan.

reason that the court gave to the jury an improper measure of damages. The court gave to the jury at appellee's request, the following instruction :

"In this case if the jury find from the evidence that the plaintiff, Scanlan, was stopped or prevented by defendant from completing the work without the fault of said Scanlan, then and in such case the jury should render a verdict for plaintiff, and in assessing damages give him such sum as the material furnished, work and labor done, was reasonably worth, if such work was done and material furnished. It is well settled in this State that when a suit is brought to recover for work done or material furnished under a special contract, the stipulations of the contract must govern as to the value of such work and materials, and the contractor can not recover upon a *quantum meruit* or *quantum valebant* in disregard of the prices fixed by the contract, notwithstanding he may have been prevented from completing the contract by the wrongful act of the other party to the contract." City of Chicago v. Sexton, 115 Ill. 230.

The fact that the court at the request of appellant gave to the jury an instruction stating the correct rule will not cure the error in this case, even if the jury might be left to choose which of the two different rules of damage stated to them by the court they would follow; for the reason that there is no evidence in the record on the theory of the true rule on which to base the verdict. The only evidence introduced by appellee, as to damages, is his own answer to the question, how much the work done and material furnished by him was reasonably worth—that it was worth $1,200, and he had never been paid any of it. There is no proof whatever of the value, according to the contract price, of the work and material furnished, and as the jury rendered a verdict for $1,200 it is evident that appellee's rule of damages was adopted. It was error to admit evidence as to what the work was reasonably worth. It should be shown what the work and material furnished were worth according to the contract price. For the error pointed out the judgment will be reversed and the cause remanded.

*Reversed and remanded.*